No. 6419.

BRIDGET REARDON VS. DANIEL MORIARTY ET AL.

One who has executed a promissory note in error, for a debt not due by her, may
legally resist the payment of the note, so long as the note is not in the hands of
an innocent third person, who has taken it for value before its maturity.

APPEAL from the Sixth District Court, parish of Orleans. *Saucier,*
J.

*J. Q. A. Fellowes* and *J. N. Hagins* for plaintiff and appellant.
*McGloin* and *Nixon* for defendants.

The opinion of the court was delivered by

MANNING, C. J.  The plaintiff has injoined the seizure and sale of a
house and lot in this City under a mortgage, and to pay four notes
secured thereby. The sale under which she bought was provoked by
the representative of her first husband's succession to pay debts. That
representative was his daughter and sole heir. The settlement of the
debts appears to have been made in an irregular manner. The widow
and purchaser was required to furnish the money necessary for that
purpose, and the sum she thus furnished exceeded the third, which the
terms of sale required to be paid cash.

Bridget Reardon is an ignorant woman, and was assisted and
advised in these transactions by her kinsman, Daniel Moriarty. Her
husband was dead, and his succession belonged to her, as surviving
widow in community, and to his only child, a daughter by a previous
marriage, in equal shares. There were some debts to be paid. The
property consisted of a lot and improvements in this city, appraised in
inventory at $5000, furniture valued at $149, and $60 cash. A sale was
had to pay debts, and to effect a partition. The lot and improvements
brought $7,750.00. One third of this price was, by the terms of sale, to be
paid cash—the residue in one and two years. The widow bought, and
the cash was paid, and this cash payment was sufficient, or nearly suffi-
cient, to pay the debts. At any rate the heir was not called on to pay any
debt, or to contribute to such payment. She received one half of the
credit instalments without diminution. Two notes, representing that
moiety, were delivered to the daughter.

The plaintiff should not have executed any other notes than these
two. She owned as much of the proceeds of sale as the daughter.
There was no obligation upon her to give notes for what was her own,
but she did give them, as she would no doubt have signed any other
notes that Moriarty told her to sign. He took possession of them
immediately—afterwards bought the two others from the daughter—
and now attempts to sell the property under the mortgage securing the
payment of all four notes. The plaintiff enjoins, and seeks legal protec-

Reardon vs. Moriarty et al.

tion from the rapacious pursuit of him, who was instrumental in impos-
ing upon her ignorance, and obtaining her signature to obligations for
money that belonged to her. Were the notes in the hands of innocent
third persons, she would be remediless, but Moriarty has them, and
brings them into court, and we can wrest them from him.

There is no doubt that Moriarty paid a part of the money for the
plaintiff. He gave his check for the whole, but she had put him in
funds certainly to the amount of a thousand dollars, besides making
sundry payments of small sums then or thereafter. He has his action
against her for the money thus loaned to her, or paid for her benefit,
and to that action he should be remitted for its recovery. Under no
aspect of the matter can he be justified in taking possession of the two
notes, which represent the plaintiff's half of the proceeds of sale, and
treating them as his own. She did not pledge them to him, nor were
they deposited with him as collaterals, nor do they represent the sum
loaned to her. It was perfectly competent for him to have taken her
note for the sum actually loaned, and to have had it secured by mort-
gage, and that was the natural, proper, and straightforward form in
which the transaction should have been clothed.

Besides, it is apparent that the plaintiff has given the two notes
that went into the possession of the heir, for a larger sum than was
coming to that heir. The account can be thus stated :

| | | |
|---|---:|---:|
| Assets ;—proceeds of sale of lot | | $7,750.00 |
| Movables and Cash | | 209.50 |
| | | $7,959. 50 |
| Claims ;—On tableau | $2,802.60 | |
| Vatter & Blanc | 128.98 | |
| Funeral expenses | 173 | 3,104.58 |
| | | $4,854.92 |
| Share of each | | $2,427.46 |

The notes executed by the purchaser, who was the widow in com-
munity, and which were delivered to the heir, were for $2583.33 and
thus exceeded by $155.87 the sum to which she was entitled. Besides,
the widow was made to pay commissions on the value of the whole
property, instead of the succession's half of it, and this excess of pay-
ment is $96.87. These two sums must be credited on the notes Mori-
arty acquired from the heir, and we justify this distinctly upon the
ground that Moriarty was the person who instigated the settlement in
the manner in which it was made, and conducted it for her.

It is therefore ordered, adjudged, and decreed that the injunction
is perpetuated as to the two notes executed by the plaintiff for her own

half of the proceeds of sale, and that the other two notes be credited
with $252.74 of same date as the notes, reserving to the defendant his
right of action against the plaintiff for the money loaned to her, or paid
for her and not repaid to him, and that the defendant pay all the costs
of both Courts.

### CONCURRING OPINION.

MARR, J.    I concur in the opinion and decree pronounced by the
Chief Justice, as far as it goes ; but I do not think it goes far enough.

The proof is plain that the plaintiff was a married woman at the
time she executed the notes in question ; and I think the notes are void
for want of the authorization of her husband.

This does not involve the nullity of the adjudication to her of the
property which belonged to the community of which she was a member.
She acquired a perfect title by the adjudication ; and she is bound to
pay according to the terms of the sale.    Between the date of the adjudi-
cation and the giving of the note she married ; and she was not legally
capable of binding herself by note or mortgage, although she was
bound by the adjudication.

The record shows that she was cited to answer, and that a judg-
ment by default was entered and confirmed against her.    In the peti-
tion brought in the name of herself and her husband it is stated that they
were both cited ; but this fact is not shown otherwise ; and as the
record does show the citation addressed to and served upon her alone,
the presumption is that if there had been a citation addressed to and
served upon the husband that fact would have been shown by the exhi-
bition of the citation.

I consider the petition as the work of the attorney who drew it.    No
allegation of service had been made by Moriarty, and his rights were
not changed by that statement.    I do not think, under the decisions in
Patterson's case, 5 An., Fasnacht's case, and Baines vs. Burbridge, 15
An., that this unnecessary statement, which, so far as the record shows,
is not true, is to be taken as a judicial admission ; which, in my opinion,
means what is alleged by the one party, and admitted to be true by the
other, or what is alleged by one as a basis of the right which he asserts,
and which estops him.

I think the judgment by default was a nullity ; and the entire
judgment should be perpetually enjoined.

1.  Because of the nullity of the notes and mortgage for want of the
proper authorization, and the consequent want of capacity of the wife to
contract.

2.  Because of the nullity of the default taken against the wife with-

out proof of the authorization of her husband, or service of citation on him.

The right should be reserved to Moriarty to sue for and receive whatever may be due him for money lent and advanced, and to Mrs. Twohy, or to Moriarty, if he-is her transferee, to recover her net half of the community, as heir of her deceased father, according to the terms of the adjudication.

## CONCURRING OPINION.

EGAN, J. I concur in the decree in this case, and the more readily because the evidence fully establishes the fact that the defendant was a married woman at the time the notes were executed and judgment obtained against her upon void notes obtained from her through fraud and in fraud of the law, and Moriarty himself admits, in his evidence in the record, that he had another note of the plaintiff given him for something over $1500, about the amount which the evidence renders it probable that he advanced or loaned to her. The law classes the incapacity of the wife with that of other incapables. The fraud attempted to be perpetrated in this case can not receive the sanction of this court. The record of the suit vs. Wm. Sullivan does not disclose the fact that her husband was cited, or that she was otherwise authorized by law to defend it. The pretense that she concealed from the defendant the fact of her marriage is not sustained by the evidence ; three witnesses swear that she told him she was married at the time the notes were given, and he himself admits he had heard it.

## DISSENTING OPINION.

SPENCER, J. I can not concur in the opinion and conclusions of the majority of the court in this case. To my mind there is an insuperable obstacle in the way, to wit : *the thing adjudged.*

Michael Sullivan, plaintiff's first husband, died, leaving a single heir, Mrs. Twohy, child of a former marriage. Plaintiff was widow in community, and Mrs. Twohy administratrix of his estate.

The community property was sold and adjudicated to plaintiff, the widow, on twelfth April, 1873, for $7750, one third cash, the balance in one and two annual payments, with mortgage reserved. On seventeenth June, 1873, plaintiff, not to say clandestinely, at least secretly, contracted a second marriage with another Sullivan, to wit : Eugene.

On eighteenth July, 1873, a month after second marriage, she says Moriarty, her cousin, persuaded her, without her husband, to go to the

notary's office to fix up the title to the house she had so bought. She says Moriarty knew she was married. Moriarty denies it. It matters not. The act of sale in pursuance of the adjudication was drawn up by the notary and signed by the administratrix and plaintiff. Plaintiff executed notes for the deferred payments at one and two years—two at one and two at two years. Moriarty gave his own check for the cash part of the price, $2583, which was applied to paying the community debts. Plaintiff swears she furnished $1000 of this money paid by Moriarty—so that he in reality only furnished her $1583. There is no doubt, that as partner in community she herself owned two of the four notes so executed by her. Moriarty, however, took them, he says, as security for the money advanced by him. She says she does not know how he came by them, but that she supposed they were in the hands of the administratrix. For the sake of the argument, I concede that he took unlawful possession of the two notes belonging to her. He afterward bought the two. belonging to Mrs. Twohy, so that he held all four of plaintiff's notes.

On the twentieth of April, 1875, Moriarty brought suit against plaintiff and her husband, Eugene Sullivan, on these four notes and the mortgage and vendor's lien securing them, as evidenced by the notarial act, and prayed for citation of both husband and wife.

On the eighth of May, 1875, final judgment was rendered (confirming a default of the fourth of May) in favor of Moriarty vs. Mrs. Sullivan, the plaintiff in this suit, for the full amount of the four notes, with recognition of mortgage, etc. The notice of this judgment was irregularly served ; at least the return shows it to have been served upon one *Michael* Sullivan (the name of her first husband) instead of Eugene Sullivan, her second husband. Let us admit, too, that this was not a mere clerical error of the sheriff.

On the thirty-first of May, 1875, a writ of *fieri facias* issued on this judgment of Moriarty vs. Mrs. Sullivan, and the sheriff seized the mortgaged property, *in her possession*, and held and owned by her under the title stated above.

Mrs. Sullivan (Bridget Reardon) and her husband, Eugene Sullivan, thereupon sued out this injunction against Moriarty and the sheriff—in which she alleges, in substance, as follows :

That Moriarty had brought the suit above referred to "against your petitioner, Bridget Reardon, and *made your petitioner, Eugene Sullivan a party thereto*, simply to assist his said wife therein." "That *after citation of your two petitioners* the said Moriarty *obtained judgment by default against your petitioner, Bridget*, and had the same confirmed on the eighth of May, " etc. She alleges that said four notes and act of sale and mortgage were executed on the eighteenth of July, 1873,

at which time she was a married woman, the wife of Eugene Sullivan, and that she executed said notes and acts without his assistance or authority, and "was persuaded thereto by said Daniel Moriarty, who well knew at the time that she was a married woman;" "that *in some manner unknown to her* said Moriarty came into possession of said notes, although by said notarial act it appears the possession thereof was given to Mrs. Twohy, administratrix of the estate of Michael Sullivan." That the said four notes and act of sale and mortgage are mere nullities, and not binding on her "for the reason that they were executed by her while she was a married woman and without the consent or assistance of her husband." That said transactions "were nothing but a mere fraud practiced upon your petitioner and known to have been so by said Moriarty at the time, and were null and void." That said Moriarty has "*obtained said judgment on obligations null and void,* and *that said judgment* is equally null and void and should be quashed, set aside, and rescinded, *especially for want of capacity of your petitioner to obligate herself in this manner.*" That said Moriarty has issued *fi. fa.* on such judgment, "and *seized the property of your petitioner.*" She prays for an injunction to restrain the sheriff and Moriarty, and for judgment rescinding and annulling the said judgment in Moriarty vs. Bridget Reardon. The injunction was granted as prayed for. Nothing is said about her having received no notice of judgment.

By a supplemental petition she alleges that two of the notes for which Moriarty had so obtained judgment against her were, in fact, her own property and did not belong to Moriarty. These are the whole of her allegations, and upon these this injunction was granted. The sole grounds, therefore, that she sets up for the injunction, and for the nullity of the judgment obtained against her by Moriarty are, first, that she was a married woman and without capacity *when she signed* the deed, mortgage, and notes, and did so without the authority of her husband. She does not pretend, however, that the adjudication upon which this deed, etc., was based was not made to her *during her widowhood.*

She does not pretend or allege that the property bought was not in her possession—on the contrary—that it was. She does not pretend or allege that the debt for which judgment had been obtained against her was the debt of her husband, Eugene Sullivan, or otherwise contracted in violation of prohibitory laws.

Her second and only other ground of injunction and nullity is that two of the notes embraced in said judgment did not belong to Moriarty but to herself.

Moriarty, in answer to the injunction, plead, first, by way of exception, that her petition disclosed no cause of action. In my opinion this

exception should have prevailed, if it had been tried preliminarily. But it was tried, with the merits and evidence offered without objection, which, I think, destroyed it. His answer sets up various defenses, but I shall notice but one, that of *res adjudicata*. He says that the judgment obtained by Moriarty against Mrs. Sullivan on these notes, being unappealed from, is *res adjudicata* as to the matters and things now urged by her. She seeks to enjoin and annul his judgment on the ground that she was a married woman, unauthorized, when she signed the notes and mortgage, and that two of the notes sued upon were, in fact, her own property. Now, to my mind, it is too plain for argument that these are matters which could only be set up and urged as defenses to the suit of Moriarty vs. Sullivan. It is elementary that whatever can or ought to be urged by way of defense can not be used to annul or enjoin. If the judgment was rendered on insufficient evidence her only relief was by appeal. She did not do so. But, as matter of fact, the evidence upon its face was not insufficient. It proved that the debt was contracted by her *before marriage and for her own benefit*, and that she was then in the enjoyment of the property for which the notes were given. So that, had she appeared and defended the suit, no court could have refused to give judgment against her on the ground of want of authority or want of consideration. If she had appeared, and plead and proved that two of the notes were her own property (as I think they were), then, to that extent, she could have defeated the suit. But is not the want of ownership, in plaintiff, of the notes sued upon, a matter that must be pleaded in defense? Can a defendant, after judgment against him, enjoin and annul it on the ground that plaintiff did not own the notes sued upon? Yet, that is what is sought here. I can not assent to such a proposition. I conclude, therefore, that upon the matters and things alleged by the plaintiff against the judgment enjoined, that there is the thing adjudged. I am aware that our courts have gone to great lengths to protect married women. But I have examined with care all the reported cases, and I do not find a single case where our courts have held the effect of the thing adjudged to be different, as regards married women, from what it is as regards others. The only exception ever admitted in favor of married women has been in cases where they attacked by injunction judgments against them, on their allegation and oath that the debt sued upon was that of the husband or community, and, therefore, contracted in violation of a prohibitory law, and against public policy, and under marital influence. But in the case before us there is not even an insinuation that the debt sued upon was that of the husband. On the contrary, it was beyond dispute contracted during her widowhood and for her own benefit. Here the controversy should stop, as here is the end and extent of the grounds

Reardon vs. Moriarty et al.

alleged by plaintiff for her injunction and action of nullity. But plaintiff's counsel urges and argues, *in his brief*, that in the suit of Moriarty vs. Mrs. Sullivan and husband, the husband was *not cited*, and did not authorize his wife; and asks us *to annul* the judgment on that ground. He insists that this is proved by the fact that in the record of that case, as copied into this transcript, no citation appears addressed to the husband, but only one addressed to and served upon the wife. I repeat that there is no allusion in the pleadings of plaintiff to such a defect On the contrary, in their petition for injunction, now before us, the plaintiffs distinctly *allege the very contrary*. Their allegations are in these words, that "Moriarty had brought said *suit against your petitioner, Bridget Reardon,* and made *your petitioner, Eugene Sullivan, a party thereto* simply to assist his said wife therein." "That after *citation of your two petitioners* the said Moriarty obtained judgment, etc. against your *petitioner,*" etc. Upon the mere suggestion of absence of a citation to the husband in the copy of a record which was itself a mere instrument of evidence in this case, and without any allegation that such defect would be urged; on the contrary, with an express allegation that no such defect existed, can we proceed to annul the judgment in Moriarty vs. Sullivan? I say to annul it—for if we declare that that judgment is invalid for two of the notes upon which it is predicated, to that extent we annul it. Surely we can not. Had the plaintiff put Moriarty on his guard by alleging that the husband was not cited, or had she even not misled him by alleging that he was cited, there might have been plausibility in saying it was incumbent on Moriarty to prove as against this married woman the facts essential to the validity of the judgment. But in view of her own allegations, and by every rule and principle of law and practice, it seems to me that she is estopped and precluded. Her *demand for nullity* should, therefore, be rejected.

There was proof offered, *without objection*, that Mrs. Sullivan had paid or furnished $1000 of the payment of $2583 made by Moriarty for her account. I think this credit should be allowed, and to that extent the injunction should be perpetuated, and for the balance dissolved. Defendant should pay costs of both courts.

DeBlanc, J. I concur in the foregoing opinion.

ON REHEARING.

Manning, C. J. The Justices severally adhere to the opinions

read on the former hearing, both concurring and dissenting, and therefore,

It is ordered and adjudged that our former decree remain undisturbed.

EGAN, J. I consented to the partial dissolution of the injunction because I considered the plaintiff bound to carry out the terms of the original adjudication, and the decree of the court; with all the facts before us, avoids circuity of action.